UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JASMINE CLARK,  )
    a.k.a. JASMINE HENDRICKS  )
  )
v.  )  Nos. 4:04-cv-52/4:02-CR-9
  )  *Edgar*
UNITED STATES OF AMERICA,  )
  )

## **MEMORANDUM**

Federal prisoner Jasmine Clark ("Clark") moves for post-conviction relief pursuant to 28 U.S.C. § 2255. Clark contends her conviction was obtained by an involuntary and coerced guilty plea because her attorney told her that the government had a 98% chance of winning the case which made her think she would received a thirty year sentence; thus, frightening her into entering a guilty plea. Clark also maintains that her conviction should be vacated because the government never presented evidence that she sold drugs to a confidential informant ("CI") or a federal agent. Lastly, Clark contends trial counsel was ineffective. Specifically, she claims that although she had a competent attorney, he did not "put the appropiate [sic] effort towards [her] case would I have paid him myself. The advice he gave me was not benefitial [sic]. He's also done and made decisions concerning my case that he didn't get permission from me or consulting me." [Court File No. 1, at 4]. The United States opposes the motion.

After reviewing the record, the Court concludes that Clark's § 2255 motion will be **DENIED**. The record conclusively shows that Clark is not entitled to any relief under 28 U.S.C. § 2255. There is no need for an evidentiary hearing.

1

**I.    Outstanding Motions**

Clark has filed two documents which the Court treats as motions to amend her § 2255 motion [Court File Nos. 4 & 5]. Clark requests to be "re-sentenced being that my enhancements that I have, have been ruled unconstitutional" [Court File No. 4]. In her second motion to amend, she maintains that her enhancement is unconstitutional under the ruling of *Blakely v. Washington*, 542 U.S.296 (2004) (invalidating a Washington State criminal sentence because the facts supporting a sentence enhancement were neither admitted by the defendant nor found by a jury in violation of the Sixth Amendment right to a jury trial) and *United States v. Booker*, 543 U.S. 220 (2005) (Extending the holding of *Blakely* to the United States Sentencing Guidelines, the Supreme Court held the mandatory nature of the federal sentencing guidelines rendered them incompatible with the Sixth Amendment guarantee to the right to a jury trial) [Court File No. 5]. The Supreme Court, applying the *Blakely* analysis to the Federal Sentencing Guidelines, held in *Booker* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the [statutory] maximum authorized by the facts established by the plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244.

Clark was sentenced as a career offender because, although she was sentenced on her prior convictions in a single court appearance while represented by the same attorney, she was convicted of four prior state felony drug offenses as a result of three separate indictments.[1] Clark's status as a career offender was based on prior convictions.[2] Therefore, since prior convictions need not be

---

[1] On direct appeal Clark attacked her sentence enhancement based on her career offender status. The appellate court affirmed her sentence.

[2] Prior convictions which Clark acknowledged during her sentencing hearing [Sentencing Transcript "ST", at 18].

found by a jury or beyond a reasonable doubt, *Blakely* and *Booker* are not applicable to her career offender status. Consequently, since Clark's sentence was enhanced based on prior convictions, her sentence does not violate *Blakely* or *Booker*.

Regardless, even if the holdings in *Blakely* and *Booker* applied, neither *Blakely* nor *Booker* are retroactively applicable. Clark asserts her sentence was enhanced with prior drug convictions. In light of the *Blakely* and *Booker* decisions, Clark contends the Court should re-sentence her without the sentencing enhancement. *Blakely* was decided on June 24, 2004, and *Booker* was decided on January 12, 2005. Had the Supreme Court made *Blakely* or *Booker* retroactively applicable to cases on collateral review, Clark's motions to amend, which were filed on January 18, 2005 and January 20, 2005, would be timely as the one-year statute of limitations would not have begun to run until the "date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" 28 U.S.C. § 2255 (3). However, the Supreme Court in *Blakely* and *Booker* did not make those decisions retroactive. Indeed, the Supreme Court's decision in *Schriro v. Summerlin*, 542 U.S. 348 (2004),[3] indicates that it is unlikely that *Blakely* will be given retroactive effect in the future.

The Court's research indicates that the majority of courts who have addressed this issue have determined *Blakely* and *Booker* are not applicable to motions filed under § 2255. *See Humphress v. United* States, 398 F.3d 855, 860 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 199 (2005) (The Sixth

---

[3] The Court determined that its previous decision in *Ring v. Arizona*, 536 U.S. 584 (2002) where it held that a sentencing judge sitting without a jury may not find an aggravating circumstance necessary for the imposition of the death penalty because those circumstances must be found by a jury, was a procedural rule and consequently, did not apply retroactively to death penalty cases already final on direct review.

Circuit concluded that *Booker's* rule does not apply retroactively in collateral proceedings); *In re Anderson*, 396 F.3d 1336 (11th Cir. Jan. 21, 2005) ("It follows that because *Booker,* like *Blakely* and *Ring*, is based on an extension of *Apprendi*, Anderson cannot show that the Supreme Court has made that decision [*Booker*] retroactive to cases already final on direct review."); *Hamlin v. United States*, 2005 WL 102959 (D.Me. Jan. 19, 2005) (unpublished) (interpreted *Booker* to apply only to cases on direct review); *United States v. Traeger*, 325 F.Supp.2d 860 (N.D. Ill., 2004) (*Blakely* decision did not apply retroactively); *United States v. Harp*, 2004 WL 1636251 (N.D. Iowa 2004) (unpublished) (collateral relief requested in light of *Blakely* denied). In the future, if the Supreme Court makes *Blakely* or *Booker* retroactively applicable to cases on collateral review, Clark can make application for relief at that time, assuming she has a viable *Blakely*/*Booker* claim. However, at this time Clark has no viable claim under *Blakely* or *Booker*.

Accordingly, Clark's motions to amend [Court File Nos. 4 & 5] are **DENIED** because her *Blakely/Booker* claim is futile. First, the motions are futile because *Blakely/Booker* did not preclude enhancement based on prior convictions. Second, the motions are futile in light of the fact that the Supreme Court has not instructed that *Blakely* or *Booker* should apply retroactively to cases pending on collateral review.

## II. Standard of Review

A federal prisoner may file a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the United States Constitution. To obtain relief under § 2255 based on an alleged constitutional error, Clark bears the burden of establishing an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38

(1993); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir.1999). To warrant relief under § 2255, Clark is required to show a fundamental defect in the criminal proceedings which inherently results in a complete miscarriage of justice or an egregious error that rises to the level of a violation of constitutional due process. *Davis v. United States*, 417 U.S. 333, 346 (1974); *Griffin*, 330 F.3d at 736; *Gall v. United States*, 21 F.3d 107, 109 (6th Cir.1994).

## II.     Procedural History

On March 13, 2002, a federal grand jury returned a two-count indictment charging Clark with drug offenses. Clark was charged in counts one and two with distribution of cocaine base crack in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(C). Clark pleaded guilty to Count One of the indictment and was subsequently sentenced by this Court to a term of 188 months imprisonment to be followed by six years of supervised release. Clark filed a direct appeal. The Sixth Circuit Court of Appeals affirmed this Court's judgment and issued a mandate on September 7, 2004. *See United States v. Clark*, 106 Fed.Appx. 434 (6th Cir.) (unpublished), *cert. denied*, 543 U.S. 1015 (2004). The Supreme Court of the United States denied Clark's petition for writ of certiorari on November 29, 2004. Clark filed her motion under 28 U.S.C. § 2255 on or about June 11, 2004, prior to the resolution of her direct appeal. However, since her direct appeal is no longer pending before the United States Court of Appeals for the Sixth Circuit, the Court will proceed to consider Clark's § 2255 motion.[4]

---

[4]    It would be a waste of time and resources to dismiss Clark's § 2255 motion, which was filed while her direct appeal was pending, and to require her to file another § 2255 motion since her direct appeal has subsequently been resolved.

### III. Facts

The following recitation of the facts is from the Presentence Investigation Report ("PSR"):

On October 5, 2001, agents working with the 17th Judicial District Drug and Violent Crime Task Force received a telephone call from a Confidential Informant (CI) in Shelbyville, Bedford County, Tennessee. During this phone call, the CI informed agents that a black female named **Jasmine Clark** was involved in the illegal distribution of crack cocaine from Sevier Street, in Shelbyville. During this telephone call the CI agreed to assist the Task Force in a targeting effort against **Jasmine Clark**.

The CI met Task Force officers and was issued a transmitter and confidential funds. The CI was dropped off at Sevier Street by a Task Force officer. The CI was to make a 3.5 gram purchase (an eight-ball) of crack cocaine from **Ms. Clark**. The Task Force officer obtained a transmitter from another agent and made his way to Sevier Street. Once back at Sevier Street, the agent approached the front door of the residence and came in contact with a black male and black female standing on the front porch. The agent asked for the CI and the two individuals responded as if they did not know the CI. The CI heard the agent and exited a Ford pick-up truck that was parked in the side yard and occupied by several other black males. The CI introduced the Agent to the black female standing on the porch. The black female asked the agent if he was the one who wanted the ball (eight-ball of crack cocaine). The agent stated he was and asked her if she would take $160.00 for it. She stated that she would and handed the agent a small plastic bag containing suspected crack cocaine. After inspecting the suspected crack cocaine, the agent told the black female that it looked good. The agent then counted out and handed her $160.00 in prerecorded confidential funds to complete the purchase. The black female then pocketed the money as the CI and Task Force agent made their way to the agent's vehicle. The agent debriefed the CI concerning the identity of the black female from whom the crack cocaine was purchased. The CI stated her name was **Jasmine Clark** and she resided in Murfreesboro, Rutherford County, Tennessee. The CI further reported that Ms. Clark sold crack cocaine in: Murfreesboro, Rutherford County, Tennessee; Shelbyville, Bedford County, Tennessee; and Tullahoma, Coffee County, Tennessee.

On October 12, 2001, agents working with the 17th Judicial District Drug and Violent Crime Task Force received a telephone call from a Confidential Informant (CI) in Shelbyville, Tennessee. During this phone call, the CI informed agents that he/she had contact with several individuals, two of whom were Jason Underwood and **Jasmine Clark**. They were interested in selling an eight-ball to the CI for the sum of $160.00. The agent informed the CI that the two of them would target the individuals on a one-by-one basis. The CI agreed to assist in the targeting effort.

6

A transmitter was issued to the Task Force agent and $160.00 in prerecorded confidential funds were readied. The deal was delayed for a brief time period due to the Task Force agent being involved in a traffic accident on his way to meet the CI. The CI contacted **Jasmine Clark** to set another meeting time. Once the traffic accident investigation was complete, the Task Force agent and the CI went to look for Jason Underwood and **Jasmine Clark**. The CI told the agent that Jason Underwood was located in a residence on Bird Street in Shelbyville, Tennessee. After arriving at the residence, the CI approached the front of the residence where he/she made contact with several individuals. The CI returned to the vehicle and informed the agent that Mr. Underwood could possibly be in his vehicle on Madison Street in Shelbyville.

After unsuccessfully locating [sic] Mr. Underwood on Madison Street, the agent and CI drove back to the residence on Bird Street. Again, the CI approached the front of the residence where he/she made contact with several individuals on the front porch. The CI returned to the agent's vehicle and informed the agent that **Clark** was now at the residence and would be willing to sell $100.00 worth of crack cocaine. The Task Force agent and the CI approached a window located to the right of the front porch. The agent asked **Ms. Clark** for $100.00 worth of crack cocaine. **Ms. Clark** showed the agent a small plastic bag containing several pieces of rock like substance. The agent handed **Ms. Clark** the $100.00 in prerecorded confidential funds to complete the purchase of the suspected crack cocaine.

[PSR, at 3-4, ¶s 7-11].

## IV.   Analysis of Claims

Clark raises three claims in her § 2255 motion. First Clark claims her guilty plea was not voluntary and knowing because she did not understand the consequences of her plea and she claims "I wanted to take my case to trial but my lawyer told me the government had a 98% chance of winning, so it frightened me that I would get 30 years" [Court File No. 1, at 4]. In addition, she claims she was advised she would not "get that much time because of the little amount of drugs ...involved in my case" [Court File No. 1, at 4].[5]

---

[5] Based on counsel's objection to increasing her sentencing guidelines based on the dismissed count in Clark's indictment, the Court did not determine the exact drug amount because her career offender status basically determined her sentencing guidelines [ST, at 2-4; 12-13].

Second, Clark contends her conviction was obtained as a result of a coerced confession. The Court presumes Clark is actually claiming that her conviction was obtained as a result of a coerced plea. Clark claims that "in retrospect I feel like I was coerced into taking a plea" [Court File No. 1, at 4]. To demonstrate coercion, Clark contends she was never presented with evidence that she sold drugs to a confidential informant or a federal agent but her attorney advised her to enter a guilty plea rather than go to trial.

Third, Clark contends she was denied effective assistance of counsel. Clark states that although she believes her attorney was competent, she thinks he would have put forth more effort had she been paying him. Clark claims his advice was not beneficial and he made decisions without consulting her.

As explained below, Clark effectively waived her right to raise her first two claims (alleging her plea was involuntary and coerced) in her plea agreement. However, in addition to explaining why the claims are waived the Court will make an alternative finding based on the assumption that Clark did not waive her right to raise her first two claims and is actually raising those claims as two instances of ineffective assistance of counsel. Nevertheless, under either analysis Clark is not entitled to § 2255 relief on any of her claims as she has failed to demonstrate deficient performance on the part of her counsel or any resulting prejudice from counsel's alleged deficient performance.

### A. *Waiver in Plea Agreement*

The right to appeal and the right to seek post-conviction relief are statutory rights that may be waived. A knowing and voluntary waiver in a plea agreement not to file any motions or pleadings pursuant to 28 U.S.C. § 2255 is an effective means to bar such relief. *Goodrum v. United States*, 126 Fed. Appx. 713 (6th Cir., March 29, 2005), (unpublished decision), *available in* 2005

WL 705772, *cert. denied*, 126 S.Ct. 224 (2005); *Palmero v. United States,* 101 F.3d 702 (6th Cir., Nov. 21, 1996) (unpublished table decision) 1996 WL 678222, at *2; *United States v. Bazzi,* 94 F.3d 1025, 1028 (6th Cir. 1996); *United States v. Ashe,* 47 F.3d 770, 775 (6th Cir.), *cert. denied,* 516 U.S. 859 (1995); *United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994). Clark's first and second claims, alleging her plea was involuntary and coerced, are barred because the waiver contained in her plea agreement is sufficient to bar relief on those two claims in this case.

Clark is bound by her plea agreement wherein she expressly waived "the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 on any ground, other than ineffective assistance of counsel, prosecutorial misconduct, or subsequent change in the interpretation of the law which may affect her case." The Sixth Circuit has determined that a criminal defendant may waive "'any right, even a constitutional right' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001) citing, *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995), *cert. denied*, 516 U.S. 859 (1995). Thus, plea agreements that include waivers of § 2255 rights are generally enforceable if the defendant entered into the waiver agreement knowingly, intelligently, and voluntarily. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001); *also see Watson v. United States*, 165 F.3d 486, 489 N. 4 (6th Cir. 1999).

Clark does not claim nor does the record indicate that she did not knowingly, intelligently, and voluntarily waive her § 2255 rights. Accordingly, since Clark's first two claims are not covered by any of the grounds reserved by her in the plea agreement, she has waived her right to bring these first two claims.

Even assuming *arguendo* that Clark is attempting to challenge counsel's effectiveness in her first two claims, she still would not be entitled to § 2255 relief as explained below.

9

## B. Ineffective Assistance of Counsel

Interpreting Clark's first two claims as claims of ineffective assistance of counsel, Clark, in effect, claims she was deprived of her right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution because her attorney coerced her into entering an involuntary plea of guilty. In her third claim, Clark asserts counsel made decisions without consulting her.

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall have the right to assistance of counsel for his defense. Ineffective assistance of counsel occurs when an attorney's deficient performance prejudices the criminal defendant. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004), *cert. denied*, 544 U.S. 925 (2005); *Smith v. Mitchell*, 348 F.3d 177, 199 (6th Cir. 2003), *cert. denied*, 543 U.S. 841 (2004); *Skaggs v. Parker*, 235 F.3d 261, 266-67 (6th Cir. 2000), *cert. denied*, 534 U.S. 943 (2001).

The Supreme Court, in *Strickland,* established a two-part test for evaluating ineffective assistance of counsel claims. First, Clark must demonstrate that her counsel's performance was deficient, i.e., fell below an objective standard of reasonableness. Second, Clark must establish that the deficient performance prejudiced her defense by depriving her of a fair proceeding. *Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836-37; *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Smith*, 348 F.3d at 199; *Mason v. Mitchell*, 320 F.3d 604, 616 (6th Cir. 2003); *Wickline v. Mitchell*, 319 F.3d 813, 819 (6th Cir.), *cert. denied*, 540 U.S. 955 (2003); *Skaggs*, 235 F.3d at 267.

In determining whether the attorney's conduct was deficient under the first prong of the *Strickland* test, Clark is required to demonstrate that her attorney's alleged errors were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687-88; *Sowell*, 372 F.3d at 836; *Wickline*, 319 F.3d at 819. This Court's scrutiny of the reasonableness of counsel's performance is highly deferential. Defense counsel is strongly presumed to have rendered adequate legal assistance and to have made all decisions in the exercise of reasonable professional judgment and sound legal strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90 (strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance); *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004), *cert. denied*, 543 U.S. 1119 (2005); *Mason*, 320 F.3d at 616-17; *Wickline*, 319 F.3d at 819; *Skaggs*, 235 F.3d at 268; *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997), *cert. denied*, 523 U.S. 1079 (1998); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996); *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994).

The second prong of the *Strickland* test requires Clark to show that her attorney's deficient performance actually prejudiced her case. The prejudice component focuses on the issue whether counsel's deficient performance renders the result in the criminal case unreliable or renders the criminal proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of Clark's counsel was so manifestly deficient and ineffective that defeat was snatched from the hands of probable victory. *West*, 73 F.3d at 84; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993); *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993). Specifically, the Court must determine

whether Clark's counsel's alleged deficient performance affected the outcome of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

Therefore, to establish prejudice, Clark must show a reasonable probability that, but for her counsel's errors and deficient performance, the result of the criminal proceeding would have been different and more favorable to Clark. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the criminal proceeding. *Strickland,* 466 U.S. at 693-94; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason*, 320 F.3d at 617; *Wickline*, 319 F.3d at 819; *Skaggs*, 235 F.3d at 270-71; *Carter v. Bell*, 218 F.3d 581, 591(6th Cir. 2000); *Austin*, 126 F.3d at 848; *West*, 73 F.3d at 84. In sum, Clark must show a reasonable probability that, but for counsel's errors, a plea of not guilty would have been entered and she would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. at 59.

1. Coerced Plea

Clark's first two claims are confusingly pled. However, the Court deciphers the claims as a claim that counsel coerced Clark into entering a involuntary and unintelligent guilty plea. In the first claim, Clark alleges her plea of guilty was unlawfully induced because she did not understand the consequences of her plea. Clark supports this claim with allegations that counsel's statement that the government had a 98% chancing of winning a conviction made her think she would receive a thirty year sentence, frightening her into entering a guilty plea. In her second claim, although she claims her conviction was obtained by a coerced confession, the Court presumes she is actually arguing her plea was coerced since she supports the claim with the following facts: "I feel like I was coerced into taking a plea. [Sic] Because at no time did they present evidence that I sold drugs to a C.I. or a federal agent. [Sic] By my attorney saying that I should take a plea instead of going to

12

trial..." [Court File No. 1, at 4]. In addition, Clark contends counsel advised her that she would not "get that much time" because of the small amount of drugs that are involved in my case" [Court File No. 1, at 4].

The first prong of the *Strickland* test requires Clark to show that counsel's performance was constitutionally deficient. Clark must demonstrate counsel's performance was so deficient that it rendered counsel's assistance objectively unreasonable. *Strickland*, 466 U.S. at 687-690. However, under *Stickland*, Clark must prove more. To win relief in this post-conviction proceeding, Clark's counsel not only must have been ineffective, Clark must have suffered prejudice to the level required by *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. at 56 (citations omitted). Clark challenges the voluntariness and intelligence of her plea on the grounds that counsel's prediction that the government had a 98% chance of winning a conviction frightened her into entering a guilty plea. Clark also claims she was advised she would not get "that much time because of the little amount of drugs that [were] involved in her case" [Court File No. 1, at 4].

Clark's counsel's prediction that the government had a 98% chance of obtaining a jury verdict against Clark was not deficient performance. Based on the record before the Court, it appears that counsel's prediction was reasonable. In addition, Clark's claim that she "was informed" she would not receive much jail time since she only sold a small amount of drugs is not supported

13

by the record. Clark was well informed, by the Court and counsel during her re-arraignment, that her sentence would be enhanced based on her prior criminal convictions [Re-arraignment Transcript "RT"). Thus, as explained below, the record reflects that Clark entered a voluntary and intelligent plea which was not coerced.

Clark's claim of an involuntary, unintelligent, and coerced plea is belied by the transcript of the plea hearing and sentencing hearing. At the plea hearing, the Court conducted a thorough colloquy which included asking Clark a series of questions to insure her intelligent and voluntary waiver of various rights and entry of a guilty plea [RT, at 2-6]. One of those questions specifically asked if she was pressured or threatened or forced to plead guilty. Clark denied being pressured, threatened, or forced to enter a guilty plea and after listening to the facts supporting her plea of guilt, admitted under oath that she was in fact guilty [RT, at 6].

Clark alleges she was afraid she would get 30 years and she did not understand the consequences of her guilty plea. This claim is contradicted by the re-arraignment hearing. First, Clark's fear of a substantial sentence does not entitled her to § 2255 relief. The maximum statutory penalty that Clark faced as a result of her plea was thirty years [RT, at 8]. Consequently, Clark's fear of receiving a thirty year sentence does not translate into an "unlawfully induced" plea [Court File No. 1, at 4]. The transcript of the re-arraignment reflects that Clark was thoroughly advised of her constitutional rights; advised that she was waiving those rights by pleading guilty; and advised of the consequences of her plea. The transcript also reflects that Clark understood her constitutional rights; understood that she was waiving those rights; understood that by entering a guilty plea she was waiving her constitutional rights and that she would not have a trial on the drug charges; and

understood her sentence would be enhanced by her prior convictions [Re-arraignment Transcript, at 2-7].

Clark also claims her plea was involuntary, unintelligent, and coerced by the promise that she would not get much time for the small amount of drugs she sold that were the subject of the count to which she pleaded guilty. Clark's claim that she was advised she would not receive much time if she pleaded guilty is not supported by the record. In addition to being notified, during her re-arraignment that she was subject to a sentence from zero to thirty years of confinement, Clark was informed that her state probation or parole could be revoked as a result of this conviction and that no one knew what her sentencing guidelines would be at the time she entered her guilty plea but such things, as the quantity of drugs and prior convictions would impact her sentence. The Court also reiterated that no one would know her guideline range or sentence until her actual sentencing hearing. Clark acknowledged that she understood her guideline range and that her sentence would not be known until her sentencing hearing [Re-arraignment Transcript, at 8-10]. As further explanation to Clark during her sentencing hearing that her sentence would not be determined until the sentencing hearing, and that her prior convictions would affect her sentence, her trial counsel stated the following on the record:

> I've tried to explain to her, and I want this to be on the record as a reiteration of what you just said, but stated in a different way, or regarding a specific aspect of it. Her plea, as she understands it, is only to an offense against the United States, where her sentence is based upon a combination of factors that we have discussed, but we don't know exactly where we're going to end up. As pointed out by Mr. Laymon, there is a very low sentence, there is a very high sentence within the sentencing range in which she falls.
>
> She is a convicted felon, and it was indicated that this offense was committed while she was on parole. I've explained to her that those are enhancing factors. She may also be involved in a status or a part of a status as based upon her prior record. I've explained that I have the ability to raise reasonable arguments to anything regarding

15

the presentence report. And I think she understands that, but the biggest thing I wanted to clear up for her in her mind is that her plea doesn't change that, whether

she went to trial and was convicted or whether she pled, her past record is really not going to be affected by that, as to how it impacts on her sentence.

[Re-arraignment Transcript, at 11-12].

The record does not support Clark's claim that her plea was coerced or involuntary. Clark has failed to provide any credible evidence that she was coerced into pleading guilty with a promise of a low sentence of confinement. In addition, her claim that she was not presented with any evidence that she sold to a confidential informant ("CI") or a federal agent and that she told the Court she did not know if she was guilty does not demonstrate by a preponderance of the evidence that her guilty plea was coerced or involuntary. Moreoever, Clark has not alleged nor demonstrated that, but for counsel's alleged deficient performance, she would have pleaded not guilty and proceeded to trial. *Hill v. Lockhart*, 474 U.S. at 59. During her re-arraignment, the prosecutor summarized the factual basis for Clark's plea as follows:

> On October the 12th, 2001, in Shelbyville, Bedford county, in the Eastern District of Tennessee, an undercover drug task force agent met with Ms. Clark, the defendant, and purchased crack cocaine directly from her. And that substance was sent to the TBI Crime Lab in Nashville, which in fact determined it to be crack cocaine. The officer was equipped with a body wire transmitting device, which recorded and transmitted the transaction. And that would be the government's proof, Your Honor.

[R.T. at 13]. Then the following colloquy took place:

> THE COURT: All right, Ms. Clark, did you – you may not know whether or not the confidential informant had a body wire, but did you sell crack to him on October 12th of 2001?
>
> THE DEFENDANT: I mean, it's a high possibility, I mean.
>
> MR. HOBBS: We don't know who the individual is, Your Honor, and that's what she's pointing out to me, but - -

16

THE COURT: Okay. Well, let me ask this. Are you pleading guilty because you're guilty?

THE DEFENDANT: I'm pleading guilty because I probably think I'm guilty. I mean, I'm more than likely guilty.

THE COURT: Well, I have to be more sure than that. I have to know for sure that you're guilty before I can accept your plea.

MR. HOBBS: I'll put it his way and see if she either agrees or disagrees. This was a controlled buy, apparently. Obviously, she didn't know that. She was in Shelbyville on that date. And as she relates to me, she didn't know the individual, then, again, we don't know which individual, and this was a small, a small amount, I think.

THE COURT: Yeah.

MR. HOBBS: Those are the reasons. She's not trying to be obtuse with Your Honor. This isn't what I deal with sometimes where you would be involved in such a transaction you couldn't possibly forget it. These are small transactions we're talking about.

THE COURT: So, basically, what you're saying is that you sold a lot of crack to different people and along about that time period, you just can't remember this particular transaction? Is that kind of where we are?

THE DEFENDANT: I mean, yeah. I don't want to say I sold a lot. I'm just saying, you know, I mean, I was in Shelbyville, and yes, that's what I was doing was selling crack, so ...

THE COURT: Okay.

THE DEFENDANT: I can't say honestly that I specifically sold to this individual because I don't know who the individual is.

THE COURT: Okay. Well, but you're satisfied that you are guilty of this offense? Is that where we are?

THE DEFENDANT: Uh-huh, yes, sir.

THE COURT: Okay. All right.

...

17

>    THE COURT: All right. The Court finds that this defendant is competent and capable of entering an informed plea. The Court finds that her plea is knowledgeable and voluntary, and that it is supported by an independent basis in fact containing the
>
>    essential elements of he offense charged here. The Court further, therefore, accepts her plea to Count 1, and adjudges her guilty on that count.

[RT, at 13-15].

The record reflects Clark was thoroughly questioned during the entry of her guilty plea and answered in a fashion that left no questions as to her knowing and voluntary act to enter a guilty plea. The answers given by Clark during the entry of her guilty plea are incompatible with her claim of coercion. Nothing in the record before the Court dispels the reliability of Clark's testimony at her guilty plea hearing.

Clark has failed to prove by a preponderance of the evidence that her guilty pleas were coerced and not knowing and voluntary. Moreover, the admissions Clark made during her plea colloquy is compelling evidence that she voluntarily and knowingly entered her plea. However, assuming counsel was deficient, Clark has still failed to demonstrate she suffered any prejudice as a result of those predictions. Clark does not claim that she would have proceeded to trial nor does she deny her guilt.

In her second claim, Clark contends she was never presented with evidence that she sold to a CI or federal agent. This claim, however, does not entitle Clark to § 2255 relief. The identity of the person to whom she sold drugs is not relevant. What is important is that she admitted she sold crack cocaine on the date in question at the identified location. Nevertheless, the record reflects Clark was presented with such evidence in the PSR, which she admitted reading when questioned in her sentencing hearing, as quoted above in section III. Facts,. Clark did not alleged in her § 2255

18

motion that, but for counsel's alleged deficient performance, she would have pleaded not guilty and insisted on going to trial. Clark has not presented any evidence that might support such a conclusion. Consequently, Clark has failed to demonstrate she suffered any prejudice as a result of counsel's representation.

Clark has failed to demonstrate entitlement to federal post-conviction relief on her claims that her guilty plea was coerced and involuntary. Accordingly, the Court rejects Clark's assertions that her guilty pleas were involuntary and coerced and **DENIES** her § 2255 relief on this claim. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (declarations by plaintiff in open court "carry a strong presumption of verity").

    2.   Failure to Communicate

In her last claim, Clark contends that although she believes her attorney was competent, his advice was not beneficial and he failed to communicate with her prior to making decisions. Clark has failed to identify what advice counsel rendered and what decisions counsel made without consulting her and how this alleged deficient performance resulted in prejudice to her. [6]

Contrary to the express directions of Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, Clark's claim does not "state the facts supporting [this] ground" of ineffective assistance of counsel. Clark does not provide any factual support for any of these assertions. Consequently, Clark has failed to set forth a legally sufficient claim for relief because she has omitted the factual support for her claim. This claim does not contain sufficient facts to constitute a viable claim for relief in a federal habeas court. Thus, this claim is

---

[6]   Assuming for the sake of discussion that the claim is sufficient, Clark is not entitled to § 2255 relief because she has failed to demonstrate deficient performance by her counsel or any prejudice.

summarily denied for failure to state specific and detailed supporting facts. *See* Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; *Sloan v. United States*, 2006 WL 686875 (E.D. Tenn. March 16, 2006);*United States v. Vega*, 2006 WL 1699530 (W.D. Tenn. June 15, 2006); and *United States v. Butt*, 731 F.2d 75, 77 (1st Cir. 1984).

Accordingly, this claim of ineffective assistance of counsel, which is facially insufficient to state a claim of relief, will be **DENIED** for failing to comply with Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

## V. CONCLUSION

For the reasons set forth above, the Court holds Clark's conviction and sentence were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** [Court File No. 1].

A separate judgment order will enter.


                           */s/ R. Allan Edgar*
                            R. ALLAN EDGAR
                   UNITED STATES DISTRICT JUDGE